Argued and submitted June 12, 1985, reversed and remanded January 29, 1986

## AMVESCO, INC.,
*Appellant,*

*v.*

## KEY TITLE COMPANY OF BEND,
*Respondent.*

(32826; CA A31774)

. 713 P2d 614

Harold D. Gillis, Eugene, argued the cause and filed the briefs for appellant.

Brian J. MacRitchie, Bend, argued the cause for respondent. With him on the brief was Gray, Fancher, Holmes & Hurley, Bend.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff is the sublessor of commercial real property in Bend. It brought this action against defendant, its tenant, for unpaid rent and real property taxes.[1] At the close of plaintiff's case, defendant moved for a judgment of dismissal. Defendant asserts that plaintiff proved only the amount of rent reserved in the sublease and the amount of defendant's arrearage and that, to carry its burden of proof, plaintiff was required to and did not prove the difference between the stipulated rent and the fair market rental value of the premises or, alternatively, that "it was unable to relet the premises and thereby recover the entire stipulated rent." Plaintiff responds that defendant had the burden of proving that plaintiff *could* have relet the premises. Plaintiff argues that the

"* * * burden was * * * upon [defendant] to prove that [defendant] had surrendered the premises to [plaintiff] * * *, or that [defendant] had abandoned the premises to [plaintiff] * * *, or that [plaintiff] was in a position to mitigate its damages (which necessarily required surrender or abandonment)."

The trial court agreed with defendant and entered a judgment of dismissal without prejudice.[2] Plaintiff appeals, and we reverse.

We note initially that there were facts in the record, in the form of defendant's responses to requests for admission, sufficient to support the inference that defendant retained control of the premises and that plaintiff was therefore unable to mitigate its damages by reletting them. *See* ORCP 45D. However, because our reversal and remand may result in a new trial and because the dispute between the parties is about which of them has the burden of proving whether the premises could have been relet, the fact that plaintiff may have offered enough evidence at the first trial is not a sufficient answer to the question the parties pose.

---

[1] The unpaid real property taxes are not an issue in this appeal, or at least the parties do not make them one.

[2] Neither party argues, and we do not conclude, that the dismissal without prejudice is unreviewable under these circumstances. *See Meadowbrook v. Groves,* 60 Or App 26, 652 P2d 842 (1982).

Both parties rely on *Kulm v. Coast-to-Coast Stores,* 248 Or 436, 432 P2d 1006 (1967), a landlord's action against a tenant for breach of a contract to renew a lease,[3] in which the court said:

"Plaintiff [landlord] takes the position that no matter how the rule of damages is stated, defendant [tenant] has the burden of proving that plaintiff could have mitigated his damages by leasing the premises to others. For this proposition plaintiff relies upon the language in *Enco, Inc. v. F. C. Russell Co.,* 210 Or 324, 311 P2d 737 (1957), where the court held that the plaintiff had the duty to mitigate damages but that 'the defendant has the burden of proving that such mitigation is possible.' (210 Or at 339). The *Enco* case merely states the universally accepted rule that defendant has the duty of proving that mitigation of damages by the plaintiff was possible and did not address itself to the question presented to this court. The question now before us is whether plaintiff, in order to make out his case, is required to establish as the measure of his damages the difference between the stipulated rental and the reasonable rental value of the premises.

"* * * * *

"In several Oregon cases involving contracts other than for the sale of goods we have held that plaintiff must prove more than the contract price. The principle applied in the cases involving contracts for the sale of goods and other contracts where the plaintiff's loss is normally less than the contract price, is equally applicable to contracts for the extension or renewal of a lease. In ordinary circumstances property which is the subject matter of a contract to execute or renew a lease can be leased to others upon the promissor's failure to accept the lease. Under such circumstances it is reasonable to assume, in the absence of proof to the contrary, that the lessor's loss is not the full amount of the stipulated rent but an amount which represents the difference between the stipulated rent and the rent which plaintiff would receive upon leasing the premises to others. If the plaintiff can show that there is no market for the leasehold, he can, of course, recover the entire amount of the rent reserved, but it is his

---

[3] The principles announced in *Kulm* are applicable to the breach of a lease agreement as well as to a breach of a contract to renew a lease. *See U.S. Nat'l Bank v. Homeland,* 291 Or 374, 631 P2d 761 (1981); *Davis v. Wilson,* 261 Or 137, 141, 493 P2d 31 (1972).

burden to show this and if he does not, he has not made out his case. * * *" 248 Or at 439-42. (Footnote omitted.)

Stated most succinctly, the issue here is whether, in the light of *Kulm,* the burden of proving inability to relet because of a tenant's continued possession is the landlord's, as part of its showing of damages, or the tenant's, as part of its affirmative showing that the landlord could have mitigated damages. The tenant had vacated the premises. *Kulm* states that a landlord, as an alternative to proving the rental value of the premises, may recover the full amount of the unpaid reserved rent upon a showing that "there is no market for the leasehold"; the court did not state that it is also part of the landlord's burden to establish the impossibility of placing the leasehold on the market due to the tenant's continued control. We hold that the landlord does not have that burden.

Although *Kulm* was decided on a burden of proof issue, its underlying premise is that a landlord has a duty to relet if possible and that, like a seller of unaccepted goods, he does not have the option of seeking damages that can be offset by resort to an available market. *Kulm* expanded on the earlier decision in *Wright v. Baumann,* 239 Or 410, 415, 398 P2d 119, (1965), where the court stated that, when the tenant has abandoned leased property, the landlord may not "stand idly by the vacant, abandoned premises and treat them as the property of the tenant and recover full rent * * *." Given the basis for the holding in *Kulm* that the landlord must establish the nonexistence of a market to prove damages equal to the stipulated rent, we do not think it follows that the landlord must also establish that he has the control of the premises necessary for him to resort to any market that might exist.

Proof that there is no market is a logical adjunct of the requirement that the landlord establish market value; proof that the landlord has control of the premises is a logical adjunct of the defensive showing that mitigation by reletting is a possibility. In our view, *Kulm presupposes* that leased premises are available for reletting before the landlord's duty to relet arises, and we conclude that proof of that availability is part of the tenant's showing of mitigation, rather than the landlord's showing of damages. We therefore agree with plaintiff that it carried its burden of proof and that the trial court erred by dismissing the action.

Plaintiff also argues that the trial court erred by awarding attorney fees to defendant. The award of attorney fees falls by virtue of our reversal of the judgment on the merits, and the specific reason plaintiff advances for contending that the fees should not have been awarded is not sufficiently likely to be a factor on remand to require discussion here.

Reversed and remanded.[4]

---

[4] This opinion is concerned only with commercial tenancies. *See U.S. Nat'l Bank v. Homeland, supra,* 291 Or at 376, n 1.